**VIRGINIA:**

### IN THE CIRCUIT COURT OF RAPPAHANNOCK COUNTY

-----------------------------------------------------------------x

DAVID L. KONICK, TRUSTEE :
                        PETITIONER, :

vs. :   Case No. CL24-<u>61</u>
   :

BOARD OF SUPERVISORS OF RAPPAHANNOCK COUNTY :
<u>SERVE</u>: ARTHUR L. GOFF, COUNTY ATTORNEY :
     238 GAY STREET, WASHINGTON, VIRGINIA :

                          RESPONDENT :

-----------------------------------------------------------------x

```
VALIDATE CASE PAPERS
RCPT : 24000000595
DATE : 04/01/2024 TIME: 11:42
CASE : 157CL24000061-00
ACCT : KONICK, DAVID L; TR
AMT. : $86.00
```

### PETITION FOR DECLARATORY JUDGEMENT
### NULLIFICATION OF ZONING ORDINANCE AMENDMENT
### <u>AND INJUNCTIVE RELIEF</u>

***COMES NOW***, Petitioner, *by counsel*, pursuant to Virginia Code § 15.2-2285(F), the Declaratory Judgment Act, Virginia Code §§ 8.01-184, *et seq.* and 42 U.S.C. 1981, *et seq.* and petitions this Court for judgment against the Governing Body of Rappahannock County, Virginia, Respondent Board of Supervisors of Rappahannock County, Virginia (hereafter "the Board") and temporary and permanent injunctive relief against the Board and its agent, the Rappahannock County Zoning Administrator, and damages and attorney's fees as provided in 42 U.S.C. 1988 on the grounds and in the amounts hereinafter more particularly set forth, and in support thereof respectfully state as follows:

(1)     The Board of Supervisors of Rappahannock County (hereafter "the Board") enacted a local Zoning Ordinance pursuant to Virginia Code Chapter 22, Article 7, §§ 15.1-2280, *et seq.* as Chapter 170 of the Rappahannock County Code (hereafter "the Zoning Ordinance").

(2)     Petitioner is the owner of a ± seventy three acre tract or parcel of land in Stonewall Magisterial District, Rappahannock County that is in the A-1 Agriculture District, namely Tax Map No. 40-28, and which was acquired the Trust of which he is Trustee by deed

---

recorded September 8, 2022 – a period of less than two (2) years before the filing of this action and the effective date of the local ordinance that is the subject of this proceeding.

(3)   This Petition seeks, *inter alia*, review and declaratory judgement regarding an amendment to the Rappahannock County Zoning Ordinance adopted March 4, 2024 by the Board that directly affects Petitioner and the value of the real property in Rappahannock County held in Petitioner's name (hereafter "the March 4th Amendment" a copy of which is hereunto attached as "**Exhibit A**").

(4)   The March 4th Amendment purports to impose a two-year holding period for landowners to apply for a special exception permit for a "tourist home" pursuant to Ordinance 170-66 (K) by adding a new subsection (9) as follows:

> "(9) **The zoning administrator shall not accept a special exception application for tourist homes <u>unless the applicant/owner has owned the subject parcel for a period of not less than two years</u>**." (emphasis added)

(5)   The March 4th Amendment strips Petitioner, and the Trust of which he is Trustee, as well as the Trust's beneficiaries, successors and assigns, from utilizing its real property for a purpose that is permitted to other, similarly situated property owners in the Agriculture, Conservation, Rural Residential-5, Residential-2 and Residential Village Zoning Districts of Rappahannock County [*see*, Ordinance, §170-36, Section E(28)].

(6)   In addition, application of the March 4th Amendment will have a chilling effect on any potential sale of Petitioner's real property and cause an immediate diminution in its market value, since many prospective purchasers would be interested in using all or a portion of Petitioner's real property – which has approximately approximately one mile of frontage on the Thornton River and numerous building sites with spectacular views of Red Oak Mountain, Old Rag Mountain and the Blue Ridge Mountains – as a tourist home.

(7)   For the reasons hereinafter more particularly stated, *infra.*, the March 4th Amendment is *ultra-vires*, arbitrary, capricious, discriminatory, unreasonable, and was enacted in violation of Dillon's Rule, and of, *inter alia*, Article I, Section 11 and Section

15 of the *Constitution of Virginia*, and Section 1 of Amendment XIV to the *Constitution of the United States of America of 1787*,[1] as a result of any one of the foregoing reasons it should be declared unlawful, unenforceable, and void *ab initio*.

(8)   This Court has jurisdiction pursuant to, *inter alia*, Virginia Code §15.-2-2285 (F).[2]

## COUNT ONE:
## REQUEST FOR DECLARATORY JUDGEMENT

(9)   All of the allegations of paragraphs (1) through (8) are incorporated herein by reference, as if repeated *verbatim*.

(10)   Virginia Code §15.2-2280 authorizes localities, including Rappahannock County, to adopt zoning ordinances, *viz.*:

> **§ 15.2-2280. Zoning ordinances generally.**
>
> Any locality may, by ordinance, classify the territory under its jurisdiction or any substantial portion thereof into districts of such number, shape and size as it may

---

[1] "1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. *No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States*; *nor shall any State* deprive any person of life, liberty, or property, without due process of law; nor to *deny to any person within its jurisdiction the equal protection of the laws*." (emphasis added)

Passed by Congress June 13, 1866. Ratified July 9, 1868.

"Equal laws protecting equal rights are found as they ought to be presumed, the best guarantee of loyalty & love of country; as well as best calculated to cherish that mutual respect & good will among Citizens . . . which are necessary to social harmony and most favorable to the advancement of truth."

~James Madison, letter to Jacob De La Motta, August 1820

***The Papers of James Madison***, Retirement Series, vol. 2, *1 February 1820–26 February 1823*, ed. David B. Mattern, J. C. A. Stagg, Mary Parke Johnson, and Anne Mandeville Colony. Charlottesville: University of Virginia Press, 2013, pp. 81–82.]

[2] **§ 15.2-2285. Preparation and adoption of zoning ordinance and map and amendments thereto; appeal.**

\* \* \*

(F) Every action contesting a decision of the local governing body adopting or failing to adopt a proposed zoning ordinance **or amendment thereto** or granting or failing to grant a special exception **shall be filed within thirty days of the decision** with the circuit court having jurisdiction of the land affected by the decision. (emphasis added)

deem best suited to carry out the purposes of this article, and in each district it may regulate, restrict, permit, prohibit, and determine the following:

1. The use of land, buildings, structures and other premises for agricultural, business, industrial, residential, flood plain and other specific uses;

2. The size, height, area, bulk, location, erection, construction, reconstruction, alteration, repair, maintenance, razing, or removal of structures;

3. The areas and dimensions of land, water, and air space to be occupied by buildings, structures and uses, and of courts, yards, and other open spaces to be left unoccupied by uses and structures, including variations in the sizes of lots based on whether a public or community water supply or sewer system is available and used; or

4. The excavation or mining of soil or other natural resources.

Nowhere does the statute grant localities the authority to designate or restrict any permitted uses of land based on the landowner's holding period or term of ownership.

(11) The adoption of Zoning Ordinances by localities, including Rappahannock County, are subject to the provisions of Code §15.2-2282 and Code §15.2-2283, which provide as follows:

### § 15.2-2282. Regulations to be uniform.

**<u>All zoning regulations shall be uniform for each class or kind of buildings and uses throughout each district</u>**, but the regulations in one district may differ from those in other districts. (emphasis added)

### § 15.2-2283. Purpose of zoning ordinances.

Zoning ordinances shall be for the general purpose of promoting the health, safety or general welfare of the public and of further accomplishing the objectives of § 15.2-2200. To these ends, such ordinances shall be designed to give reasonable consideration to each of the following purposes, where applicable: (i) to provide for adequate light, air, convenience of access, and safety from fire, flood, impounding structure failure, crime and other dangers; (ii) to reduce or prevent congestion in the public streets; (iii) to facilitate the creation of a convenient, attractive and harmonious community; (iv) to facilitate the provision of adequate police and fire protection, disaster evacuation, civil defense, transportation, water, sewerage, flood protection, schools, parks, forests, playgrounds, recreational facilities, airports and other public requirements; (v) to protect against destruction of or encroachment upon historic areas and working waterfront development areas; (vi) to protect against one or more of the following: overcrowding of land, undue density of

population in relation to the community facilities existing or available, obstruction of light and air, danger and congestion in travel and transportation, or loss of life, health, or property from fire, flood, impounding structure failure, panic or other dangers; (vii) to encourage economic development activities that provide desirable employment and enlarge the tax base; (viii) to provide for the preservation of agricultural and forestal lands and other lands of significance for the protection of the natural environment; (ix) to protect approach slopes and other safety areas of licensed airports, including United States government and military air facilities; (x) to promote the creation and preservation of affordable housing suitable for meeting the current and future needs of the locality as well as a reasonable proportion of the current and future needs of the planning district within which the locality is situated; (xi) to provide reasonable protection against encroachment upon military bases, military installations, and military airports and their adjacent safety areas, excluding armories operated by the Virginia National Guard; and (xii) to provide reasonable modifications in accordance with the Americans with Disabilities Act of 1990 (42 U.S.C. § 12131 et seq.) or state and federal fair housing laws, as applicable. Such ordinance may also include reasonable provisions, not inconsistent with applicable state water quality standards, to protect surface water and ground water as defined in § 62.1-255.

(12)   The March 4th Amendment, in addition to its other deficiencies, is a blatant violation of Code § 15.2-2282 which mandates that zoning regulations be uniform for all uses within each zoning district, and instead, imposes a non-uniform requirement based on the length ow ownership of the real property that is not permitted by Code § 15.2-2283, and is unreasonable, not based on any objective or reasonably debatably standard, and is discriminatory, arbitrary and capricious on its face.

(13)   The Board, in adopting the March 4th Amendment, cited absolutely no differences in impact on the County or surrounding properties between Tourist Home establishments on real property owned for more than two years versus those on real property owned for less than two years relative to (i) adequate light, air, convenience of access, and safety from fire, flood, impounding structure failure, crime and other dangers; (ii) congestion in the public streets; (iii) creation of a convenient, attractive and harmonious community; (iv) provision of adequate police and fire protection, disaster evacuation, civil defense, transportation, water, sewerage, flood protection, schools, parks, forests, playgrounds,

recreational facilities, airports and other public requirements; (v) destruction of or encroachment upon historic areas; (vi) overcrowding of land, undue density of population in relation to the community facilities existing or available, obstruction of light and air, danger and congestion in travel and transportation, or loss of life, health, or property from fire, flood, impounding structure failure, panic or other dangers; (vii) encouragement of economic development activities that provide desirable employment and enlarge the tax base; (viii) preservation of agricultural and forestal lands and other lands of significance for the protection of the natural environment, or any other lawful consideration relating to zoning restrictions or any other matter enumerated in Virginia Code § 15.2-2283 or any other provision of Title 15.2, Chapter 22 of the Code of Virginia whatsoever.

(14)   Dillon's Rule provides that localities have only those powers expressly granted to them by the General Assembly or those reasonably implied necessary to carry into effect the delegated powers or authority.  Where there is reasonable doubt whether or not the legislative power exists, the doubt must be resolved against the local governing body."[3] Nowhere in the Code of Virginia were localities given any express or implied powers to discriminate against local landowners with respect to their eligibility to apply for and obtain land use permits on the basis of the length of time the landowner has owned the real property, nor to, in effect, create new zones or "sub-zones" with existing zoning districts where different conditions apply based solely on the length of time the landowner has held title to the real property.  Such an enactment is arbitrary, capricious and unconstitutionally discriminatory against "new landowners" and a denial of equal rights on its face.

(15)   In addition to there being no express or implied authority to enact a zoning restriction based on length of time the landowner has owned his, her or its property as was imposed by the March 4th Amendment, the provisions thereof bear utterly no reasonable

---

[3] *See, e.g.*, **Dumfries-Triangle Rescue Squad, Inc. v. Board of Supervisors of Prince William Co.**, *supra.*, (2020); **Board of Supervisors v. Reed's Landing Corp.**, 250 Va. 397, 400, 463 S.E.2d 668 (1995). (emphasis added).

relationship whatsoever to health, safety, morals, general welfare or any other valid criteria for issuance of a permit pursuant to Ordinance § 170-66(K) or Virginia Code § 15.2-2283.[4] (16) Chapter Six of Rappahannock County's 2020 Comprehensive Plan[5] mentions "tourism," the "tourist economy" and promotion of "tourism" at least fourteen times, and, in pertinent part, states as follows:

> [pp. 81-83] "Rappahannock County's agricultural, forestry, **_and tourism industries_** are critically dependent upon the careful nurturing of these natural resources, the scenic landscapes, agricultural lands, crests and ridges . . . and surface and ground waters. To acknowledge this unique status, we the people of Rappahannock County declare it to be a 'scenic county' and all goals, principles, and policies will reflect and devolve from this fundamental recognition. These are the cornerstones upon which all of Rappahannock County's land use planning shall stand. A scenic county shall mean:
> - One in which preservation and enhancement of the natural and historic beauty and cultural value of the countryside shall be respected as being of foremost importance; and,
> - **_One in which conditions for a sustainable_** agricultural **_and tourism economy_** are not dependent on traditionally defined growth patterns as have developed in jurisdictions nearby as a consequence of the growth of the Washington, D.C. metropolitan area."

Immediately afterwards, the 2020 Comprehensive Plan states the following as overall goals:

> 7. **_Encourage and maintain a viable_** rural agricultural and **_tourism-based economy_** compatible with the county's size and character.
>
> * * *
>
> 12. Provide for the strongest possible employment base for the residents of Rappahannock County, with a diversified economy compatible with the county's current base of **_agriculture and tourism_**. (emphasis added)

---

[4] *See, e.g.,* **_County Bd. of Arlington County v. God_**, 217 S.E.2d 801, 216 Va. 163 (1975).
[5]

(17)   Principle 7 (pages 90-91) of the 2020 Comprehensive Plan is to:

"Promote only economic growth that assists in maintaining our existing balance and is compatible with the environmental quality and rural character, and does not adversely affect active farm operations, forestry operations, residential neighborhoods, ***the tourist industry***, and the county's fiscal stability. (emphasis added)

Immediately thereafter, the 2020 Comprehensive Plan states a policy to implement "Principle 7" as follows:

"7.   ***Investigate and initiate ways of promoting tourism as a suitable and appropriate form of economic development*** and ensure that tourism-oriented development is compatible with the rural and agricultural character of the county."

(18)   The two-year ownership limitation on tourist homes and bread and breakfast establishments imposed by the March 4th Amendment, without any objective analyses or impact studies, was directly contradictory to the abovementioned stated planning Principles and policy goals enumerated in the 2020 Comprehensive Plan, and as such was unreasonable, arbitrary and capricious.

(19)  Neither the Board nor the Rappahannock Planning Commission ("the Commission") undertook any fact-finding studies or any other type of economic or planning analyses, the objective results of which might justify implementation of a restriction based on the holding period in the Zoning Ordinance on the basis that it would help to achieve any of the legitimate legislative purposes enumerated in Virginia Code § 15.2-2282 or any other provision of Title 15.2, Chapter 22, or the goals, principals or policies relating to tourism stated in the Rappahannock County 2020 Comprehensive Plan.

(20)   Nor are were any objective facts or circumstances adduced by either the Commission or the Board warranting a holding period of exactly two (2) years for this particular use, as opposed to a restriction that – assuming *arguendo* that any such holding period was permitted under Title 15.2, Chapter 22, Article 7 of the Code of Virginia – would justify implementation of a minimum holding period of two days, two weeks, two months, five years any other mandated holding period.  On the contrary, the "two-year

requirement" in the March 4th Amendment was arbitrarily pulled out of thin air, or some other vacuous place in the mind of one or more members of the Board of Supervisors.

(21)   No other land use that is permitted by right or by special exception enumerated in the Rappahannock County Zoning Ordinance is conditioned on a minimum holding period by the landowner, such as the one imposed by the March 4th Amendment.

(22)   The March 4th Amendment is blatantly discriminatory and gives an impermissible and unlawful competitive advantage to Tourist Home establishments owned or operated by existing landowners in Rappahannock County, now or in the future.

(23)   There is an actual antagonistic assertion and denial of Petitioner's rights as a result of the adoption by the Board of its March 4th Amendment, and its prospective application to Petitioner, the beneficiaries of the Trust, its successors and assigns.

(24)   For all the foregoing reasons, the March 4th Amendment to the Zoning Ordinance should be declared unconstitutional, unreasonable, arbitrary and capricious, unlawful, unenforceable and void *ab initio*.

## COUNT TWO:
## REQUEST FOR INJUNCTIVE RELIEF

(25)   All of the allegations of paragraphs (1) through (24) are incorporated herein by reference, as if repeated *verbatim*.

(26)   The Respondent Board, and its agent, the Zoning Administrator, should be enjoined from enforcing the March 4th Amendment.

## COUNT THREE:
## CLAIM FOR RELIEF UNDER 42 USC §1983

(27)   All of the allegations of paragraphs (1) through (26) are incorporated herein by reference, as if repeated *verbatim*.

(28)   Passage of the March 4th Amendment to the Ordinance constitution an unlawful taking of real property and deprived Petitioner of the equal protection of the laws, and other

privileges and immunities guaranteed by the United States Constitution and the Constitution of Virginia as a result of which, Petitioner seeks relief under 42 U.S.C. §1981,[6] 42 U.S.C. §1982[7] and/or 42 U.S.C. §1983.[8]

(29) Petitioner requests an award of damages and attorney's fees in an amount to be proven at trial pursuant to 42 U.S.C. § 1988.

---

[6] **42 U.S. Code § 1981 - Equal rights under the law**

**(a) STATEMENT OF EQUAL RIGHTS**

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

[7] **42 U.S. Code § 1982 - Property rights of citizens**

"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

[8] **42 U.S. Code § 1983 - Civil action for deprivation of rights**

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

*See, e.g.*, ***Marks v. City of Chesapeake, Va.***, 883 F.2d 308 (4th Cir. 1989).

**WHEREFORE**, for all the foregoing reasons, Petitioner respectfully requests that the Court:

A. Issue a declaratory judgment nullifying the March 4th Amendment as unlawful, unconstitutional, unreasonable, arbitrary and capricious and declaring the same to be unenforceable as a matter of law, void *ab initio* and a nullity.

B. Issue a writ of prohibition and/or injunction against the Board and its Zoning Administrator barring it/her/them from enforcing the March 4th Amendment, pendente lite an after entry of a final and non-appealable order in this case;

C. Award damages in the amount of $100 or such greater amount as may be proven at trial against the Board for deprivation of rights, privileges and immunities and equal rights of Petitioner, plus and attorney's fees; and

D. Grant unto Petitioner all such other and further judicial relief as to which he may be entitled and the nature of his case may require to achieve the ends of justice.

Dated: April 1, 2023

**DAVID L. KONICK, TRUSTEE**
*BY COUNSEL*

David L. Konick   VSB No. 17495
P.O. Box 57
Washington, Virginia 22747-0057
Phone 540-937-5067

# EXHIBIT A

> "AN ORDINANCE OF THE BOARD OF SUPERVISORS OF RAPPAHANNOCK COUNTY, VIRGINIA AMENDING CHAPTER 170, ZONING, OF THE RAPPAHANNOCK COUNTY CODE TO MODIFY THE ADDITIONAL STANDARDS FOR TOURIST HOMES"
>
> ADOPTED MARCH 4, 2024

**AN ORDINANCE OF THE BOARD OF SUPERVISORS OF RAPPAHANNOCK COUNTY, VIRGINIA, AMENDING CHAPTER 170, ZONING, OF THE RAPPAHANNOCK COUNTY CODE TO MODIFY THE ADDITIONAL STANDARDS FOR TOURIST HOMES**

**WHEREAS** the Board of Supervisors of Rappahannock County, Virginia, pursuant to Rappahannock County Code (RCC) § 170-134 and the Code of Virginia § 15.2-2286.A(7) prepared, reviewed, and considered zoning ordinance amendments to the required standards for tourist homes currently permitted by Special Exception and codified in RCC § 170-66.K; and,

**WHEREAS**, the Board of Supervisors authorized the County Administrator and Zoning Administrator to advertise separate public hearings to be held before the Planning Commission and Board at next reasonable opportunity in accordance with Code of Virginia § 15.2-2204 to receive community input on the proposed amendments; and,

**WHEREAS**, after having been properly advertised, the Planning Commission held a public hearing on February 21, 2024, and following the public hearing, the Planning Commission voted (6-1) to recommend Approval to the Board of Supervisors regarding the proposed ordinance amendments to RCC § 170-66.K; and,

**WHEREAS**, a public hearing by the Board of Supervisors on the proposed amendment was duly advertised pursuant to Code of Virginia 15.2-2204.A and set for March 4, 2024 at the regular monthly meeting of the Board of Supervisors; and,

**WHEREAS**, the Board of Supervisors, having conducted the said public hearing on March 4, 2024, as advertised, and having considered the recommendation of the Planning Commission, and finding that the public necessity, convenience, general welfare, and good zoning practice require the proposed amendments, desires to adopt an ordinance amending Chapter 170, Zoning, of the Rappahannock County Ordinance.

**NOW THEREFORE BE IT ORDAINED AND ENACTED**, by roll-call vote of the Rappahannock County Board of Supervisors this fourth day of March, 2024, that Chapter 170, Zoning, of the Rappahannock County Code is by this ordinance amended, **effective July 1, 2024**, to read as follows with changes identified as such: *italicized and underlined* language is language to be added. Language that is ~~stricken through~~ is to be deleted. For clarity, sections not shown have no changes.

# Chapter 170
# Zoning

## Article VI
## Special Permits and Special Exceptions

**§ 170-66 Category 5: Commercial, Retail and Business Uses.**
Category 5, Commercial, Retail and Business Uses, shall be regulated as follows:

K. Additional standards for tourist homes and bed-and-breakfasts. **[Amended 8-4-1997; 2-1-2021]**

   (1) Such a use may provide accommodations for not more than 10 transient occupants in not more than five rooms classified as "lodging units" under Virginia Administrative Code 12VAC5-431-10.

(2) Off-street parking for the use shall be in accordance with the provisions of Article IX, shall not be located in any required front yard and shall be effectively screened.

(3) In residential and resource preservation zoning districts, any building(s) to be constructed shall not be more than two stories and have the exterior appearance of a single-family residence and normal residential accessory structures.

(4) In A and C Zones, the minimum acreage requirement for tourist homes and bed-and-breakfasts shall be 10 acres and 20 acres, provided, however, that the Board can waive the minimum acreage requirement only if the property has frontage on a paved public road that is part of the state primary or secondary system. [Amended 7-3-2023]

(5) Bed-and-breakfasts and tourist homes shall be authorized to serve meals only in numbers equivalent to the approved number of overnight accommodations.

(6) Private roads or public roads other than primary or state secondary roads serving tourist homes and bed-and-breakfasts shall meet the standards for Type II roads set forth in §§ 170-86 and 170-87 and as shown in Appendix A to the Rappahannock County Subdivision Ordinance (Chapter 147, § 147-54).

(7) Issuance by the Zoning Administrator of a special exception shall be conditioned upon the applicant obtaining any license as may be required by 12VAC5-431-180 and furnishing evidence that the proposed use meets all applicable state and local health requirements. [Amended 5-1-2023]

(8) Issuance of a special exception shall be conditioned upon the applicant obtaining a VDOT entrance permit as required by Road Design Manual, Appendix F, 24VAC30-73-40 and 24VAC30-73-60 and other applicable state law or regulation or otherwise complying with VDOT requirements.

(9) *The zoning administrator shall not accept a special exception application for tourist homes unless the applicant/owner has owned the subject parcel for a period of not less than two years.*

(10) The BZA or Board may impose additional appropriate conditions to ensure that the permitted use shall not generate noise, vibration, glare, odors, or other effects that unreasonably interfere with any adjoining landowner's enjoyment of his property or residence, including but not limited to:

   (a) The maximum number of adults permitted at any one time shall not exceed twice the number of lodging units;

   (b) Lodgers shall be notified of any applicable local noise ordinances and that violation of any such ordinance may result in fines and penalties;

   (c) The operator shall post or provide within the residential dwelling unit a clearly visible list of emergency information and the location of fire extinguishers or pull fire alarms in the residential dwelling unit offered for limited residential lodging purposes and the common areas of the building;

   (d) The operator shall ensure that each unit is equipped with functioning smoke and fire detection systems and carbon monoxide alarms as required by applicable law and codes for the residential dwelling unit; and

   (e) The operator shall provide evidence that he has no less than $500,000 of liability insurance covering the limited residential lodging use or that each limited residential lodging use is conducted through a hosting platform that provides equal or greater coverage for such use.

The foregoing Ordinance was adopted by the Board of Supervisors of Rappahannock County, Virginia, on March 4, 2024 at its regular monthly public meeting held at the Rappahannock County Courthouse, 250 Gay Street, Washington, Virginia, after having advertised that it proposed to do so in accordance with § 15.2-2204 of the Code of Virginia, and after holding a public hearing. The roll-call vote of the Board of Supervisors on a motion to adopt the Ordinance was as follows:

|  | MOTION | SECOND | ABSENT/ABSTAIN | AYE | NAY |
|---|---|---|---|---|---|
| Debbie P. Donehey |  |  |  | ✓ |  |
| Keir A. Whitson |  | ✓ |  | ✓ |  |
| Van C. Carney | ✓ |  |  | ✓ |  |
| Donna D. Comer |  |  |  | ✓ |  |
| Christine Smith |  |  |  |  | ✓ |

I certify the foregoing accurately reflects the actions of the Rappahannock County Board of Supervisors taken at the time and place stated above.

_Debbie P. Donehey_
Debbie P. Donehey
Chair, Board of Supervisors

_Garrey W. Curry, Jr._   3/4/2024
Garrey W. Curry, Jr.
Clerk for the Board of Supervisors